In a proceeding pursuant to CPLR article 78 to review a determination of the Town of Clinton Town Board dated October 16, 2007, which denied the petitioner’s application to have its road accepted for dedication by the Town of Clinton, the appeal, by permission, is from an order of the Supreme Court, Dutchess County (Sproat, J.), dated March 11, 2009, which denied the motion of the Town of Clinton, the Town of Clinton Planning Board, Daniel A. Budd, Jeff Burns, Frank Venezia, Mike Appolonia, and Raymon Oberly to dismiss the petition pursuant to CPLR 3211 (a) (7) and 7804 (f).
Ordered that the order is affirmed, with costs.
In 2005 the petitioner, Eastern Oaks Development, LLC (hereinafter Eastern), applied to the Town of Clinton Planning Board (hereinafter the Planning Board) for approval of a residential subdivision (hereinafter the Subdivision), which was to contain 11 lots. According to Eastern, it was “made clear” that Eastern did not intend to construct any homes on the lots, but that the purchasers of the lots would build their own homes. In October 2005 the Planning Board granted, by unanimous vote, Eastern’s application for conditional final approval for the Subdivision. The minutes of the meeting at which the vote was taken reflect, among other things, a discussion of road construction and the Planning Board’s concern over formal acceptance of the roads within the Subdivision: “After construction, the pond will need to be cleaned out, plants installed, with everything in place with decent roads before the town will consider formal acceptance of the roads. [Peter] Setaro [the Town Engineer] does not think this town has a set policy on when they accept the road, but most towns would like to see 80% of the houses up before the town will consider taking over the road, but that is flexible. The reason for that is that they try to avoid the final asphalt layer *677 until most of the heavy equipment work is done. They will construct up to the binder course of asphalt. The top coat goes on right before final acceptance.”
Eastern contracted with Daniel Budd, who was a member of the Town of Clinton Town Board (hereinafter the Town Board), to construct the road at issue here according to the specifications of Setaro and the Planning Board. The road was constructed as planned and, on July 5, 2006, Eastern formally offered to dedicate the road to the Town pursuant to the terms of a “Road Improvement Dedication” negotiated and embodied in a duly recorded “Offer of Cessation and Dedication.” In 2007, before the Town Board considered the offer, a financial dispute allegedly arose between Eastern and Budd, inter alia, over Budd’s alleged failure to pay a subcontractor.
In October 2007, when the issue of the road dedication was to be considered, Setaro wrote a letter to the Town Supervisor and the Town Board recommending, in his capacity as Town Engineer, that the Town Board disapprove the dedication of the road. He offered two reasons for his recommendation:
“(1) The top coarse [sic] has not been installed and the developer has offered to post a bond. This goes against standard practice. Typically we like to see approximately 80 percent of the houses constructed to ensure that the road is not damaged by the heavy construction equipment. While the 80 percent may take some time this is more reason to wait until the road has undergone some construction wear and tear and the top coarse [sic] is placed.
“(2) From a non-engineering standpoint, it is not the Towns [sic] concern that the real estate market is sluggish, that is one of the risks associated with development. Taking over a road that doesn’t serve any residents sets a bad precedent.”
With Budd recusing himself from the vote and another member absent, the Town Board declined to accept the road, and a week later informed Eastern of its decision in a letter that read, in part: “The Town Board disapproves the dedication of the Eastern Oaks Subdivision Road until there are sufficient houses constructed on the subdivision parcels.”
Eastern then commenced this CPLR article 78 proceeding against the Town, the Town Board, and the individual members of the Town Board (hereinafter collectively the Town parties). The petition alleged that the Town parties were aware that “it was critical for Eastern in its efforts to individually sell its lots that it could advise potential purchasers that the Town and Town Board would accept dedication of the road as set forth in the Approval.” Further, Eastern alleged that, before the actual *678 vote, a member of Eastern “was advised that the Town Board had already determined to refuse the road dedication” and that Budd had recused himself from the official vote only “in order to conceal his conflict of interest and efforts to undermine the Subdivision project . . . [by] influencing members of the Town Board not to approve the road dedication.” The petition also alleged that Budd and Setaro were good friends or relatives as well as his business associates, and had “collaborated and conspired to thwart the perfunctory final approval of the road dedication on spurious, bad faith, grounds in retaliation for the business dispute between” Budd and Eastern. Additionally, the petition alleged that, subsequent to the dispute between Eastern and Budd, Eastern had “disputes with Peter Setaro over baseless charges and has been advised that same threatened the Subdivision.” The petition asserted that the Town Board’s decision not to accept the road had been made “without any sound basis, without any analysis, and [was] arbitrary, capricious and in bad faith.”
Before answering, the Town parties moved to dismiss the petition pursuant to CPLR 3211 (a) (7) and 7804 (f). The Supreme Court denied the motion, and the Town parties appeal by permission. We affirm.
In considering a motion to dismiss a CPLR article 78 proceeding pursuant to CPLR 3211 (a) (7) and 7804 (f), all of the allegations in the petition are deemed to be true and are afforded the benefit of every favorable inference (see Matter of Bloodgood v Town of Huntington, 58 AD3d 619, 621 [2009]; Matter of Alabi v Community Bd. No. 2 of Brooklyn, 17 AD3d 459 [2005]). Questions of conflict of interest require a case-by-case examination of the relevant facts and circumstances (see Matter of Parker v Town of Gardiner Planning Bd., 184 AD2d 937 [1992]). Here, we do not see the ground stated for the denial of the offer of cessation as inconsistent in any way with Setaro’s earlier comment at the meeting that “most towns would like to see 80% of the houses up before the town will consider taking over the road, but that is flexible.” Nevertheless, given the allegations in the petition regarding Budd’s dispute with Eastern, the allegation that Budd, although recused from the official vote, brought about the Town Board’s denial of the offer of cessation because of that dispute, would provide a basis for setting aside the Town Board’s determination (see CPLR 7803 [3]; cf. Matter of Di Lucia v Town Bd. of Town of Westford, 245 AD2d 692, 693 [1997]; Matter of Parker v Town of Gardiner Planning Bd., 184 AD2d at 938; Matter of Di Lucia v Town Bd. of Town of Westford, 160 AD2d 1152 [1990], cert denied 498 US 1120 [1991]). Consequently, the *679 Supreme Court properly denied the motion by the Town parties to dismiss. Prudenti, P.J., Fisher, Roman and Sgroi, JJ., concur.